IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:06CR18 |
| | ) | |
| v. | ) | |
| | ) | |
| ANGELA M. ALMAGUER, | ) | SENTENCING MEMORANDUM |
| | ) | OPINION |
| Defendant. | ) | |

Defendant Angela M. Almaguer is before the court for sentencing after a hearing on November 17, 2006. Almaguer was indicted on one count of possession "with intent to distribute 5 grams or more of actual methamphetamine, its salts, isomers, and salts of its isomers. . . ." Filing No. 1. She was arrested after police executed a search warrant on the residence she shared with Edward Clark on September 30, 2005. Approximately 19 grams of a mixture or substance containing a detectable amount of methamphetamine was seized from the residence. Edward Clark was charged with two counts of drug trafficking in a separate indictment. *See United States v. Clark,* No. 8:06CR21 (hereinafter, "Clark case"), Filing No. 1, Indictment (D. Neb. 2005). He was charged with possession with intent to distribute more than 5 grams of actual methamphetamine in connection with the seizure of methamphetamine from the residence. *Id.* In another count, he was charged with possession with intent to distribute less than 5 grams of actual methamphetamine for the drug transaction that allegedly occurred on July 29, 2005. *Id.*

1

I.  BACKGROUND

Almaguer entered a plea of guilty to the single count of her indictment. Filing No. 38. In her petition to enter a plea of guilty, Almaguer wrote "[o]n Sept. 30, I intentionally possessed more than 5 grams but less than 20 grams which I would have used and shared." Filing No. 34, Petition at 14.

In Almaguer's plea agreement, the parties agreed that she should be held responsible for at least 5 grams, but not more than 20 grams, of actual methamphetamine, establishing a base offense level of 26. Filing No. 35, Plea Agreement at 2. The plea agreement also provided that the government would move for a three-level reduction for acceptance of responsibility, that the government had no evidence that a weapon adjustment should apply, and that Almaguer did not qualify for either an upward or downward adjustment for her role in the offense. *Id.* at 1-2.

Clark also entered into a plea agreement. Clark case, Filing No. 24. He entered a plea of guilty to the count that charged him with distribution of less than 5 grams of methamphetamine. *Id.,* Plea Agreement at 3; Filing No. 25, Plea Hearing Minutes. In his petition to enter a plea of guilty, Clark stated that he "sold meth." *Id.*, Filing No. 23, Petition at 14. In his plea agreement, Clark he agreed that he should be held responsible for 1.5 grams (distributed on July 29, 2005) and 19 grams (seized in search on September 30, 2005), also resulting in base offense level 26. *Id.*, Filing No. 24, Plea Agreement at 3. His plea agreement also provided for a three-level reduction for acceptance of responsibility.[1] *Id.* The practical effect of the difference in the two defendants' plea agreements is that

---

[1] Clark's PSR indicates that his criminal history category is II. At offense level 23 and criminal history category II, Clark's Guidelines sentencing range is 51 to 63 months.

Almaguer was subject to a mandatory minimum sentence under 21 U.S.C. § 841, but Clark is not.

The court accepted Almaguer's plea but deferred acceptance of the plea agreement pending review of a presentence investigation report ("PSR") by the United States Probation Office ("the probation office"). Filing No. 32, Plea Hearing Minutes. As reported in the PSR, the offense conduct involved the purchase by an informant of 2 grams of methamphetamine from Almaguer's then-boyfriend, Edward Clark, on July 29, 2005. Filing No. 39, PSR (sealed) at 4. That sale provided the grounds for a search of the residence that Almaguer shared with Clark on September 30, 2005. *Id.* In the search, police seized 19 grams of a methamphetamine mixture that was later found to be 35% pure, yielding approximately 6 grams of actual methamphetamine. *Id.*

Based on Almaguer's version of events, the PSR reported that Almaguer has been an alcoholic or drug addict for most of her life and began "buying enough drugs to use and sell so that we could pay for the drugs we used, put food on the table and pay our utility bills." *Id.* at 5. The PSR also reported that Almaguer has been a victim of domestic abuse for virtually all of her life. *Id.* at 4-5. She began drinking at age ten and using drugs at age thirteen. *Id.* at 4, 11. She had her first child at age 15 and is the mother of three children who are now between eighteen and twenty-five years old. *Id.* at 4-5, 10. At the time of the offense she was using methamphetamine daily and estimated that she snorted an average of three grams per day. *Id.* at 11.

Almaguer stated that Edward Clark had stopped using methamphetamine shortly before the search, but that she had been unable to quit and had brought some

methamphetamine to the apartment.  *Id.* at 5.  She reported that, at the time of the search, "[t]he task force told us that we didn't have to leave if we cooperated by continuing to deal so they could watch the house and see who came in and out.  We told them we weren't going to do that because we didn't want to continue to deal and we didn't have anyone to tell on."  *Id.* at 5-6.  She further reported that neither she nor Clark had used methamphetamine since the arrest and that they had gotten married and were attempting to turn their lives around.  *Id.* at 6.

Based on the quantity of actual methamphetamine seized, the probation office assigned Almaguer the base offense level of 26.  *Id.* at 7.  The PSR also stated that Almaguer met the criteria set forth in U.S.S.G. § 5C1.2(a)(1)-(5) and was thus eligible for a two-level reduction in offense level under the Guidelines corollary to the statutory "safety valve" found in 18 U.S.C. § 3553(f), U.S.S.G. § 2D1.1(b)(9). [2]  *Id.* at 8.  After application of a three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), Almaguer's total offense level, as determined in the PSR, is 21.  Almaguer was assessed one criminal history point for first-offense driving under the influence.  *Id.* at 9.  Her sentencing range under the Guidelines at criminal history category I and offense level 21 was thirty-seven to forty-six months.  The government had no objections to the information, calculations and conclusions contained in the PSR.  Filing No. 36.

---

[2]That provision is applicable if a defendant has no more than one criminal history point; did not use violence, threats of violence, or firearms in connection with the offense; the offense did not result in death or injury; the defendant was not a leader or organizer; and "[n]ot later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." U.S.S.G. § 5C1.2(a)(1)-(5)*; United States v. Tinajero,* 469 F.3d 722, 724-25 (8th Cir. 2006).

After her arrest for this offense, Almaguer was placed on supervised release. Although inpatient substance abuse treatment was recommended for her, Almaguer was not able to obtain the treatment because of financial and scheduling constraints. However, the record shows that she attended Narcotics Anonymous meetings every day, if not several times a day, while on pretrial release. Her pretrial services officer has reported to the court that Almaguer has put forth a great deal of effort to change her lifestyle. Almaguer has complied with all the conditions of release, including reporting to her pretrial services officer as directed, maintaining employment, and maintaining abstinence from drugs. She had no positive drug tests while on pretrial release.

At the sentencing hearing, defendant made an oral motion for a sentence outside the Guidelines.[3] She based the motion on her history and characteristics, her exceptional post-offense rehabilitation, her extraordinary acceptance of responsibility, the circumstances of the offense and prosecution, and the need to avoid unwarranted sentencing disparity. She contends that the facts of the case present an unusual scenario that would not ordinarily warrant a federal prosecution. Defendant also alludes to facts that may suggest a punitive federal prosecution. She argues that this case does not have the usual earmarks of a federal prosecution, such as a large quantity, a wide-ranging conspiracy, the involvement of weapons, or any vehicles or property subject to seizure. She also argues that the prosecutorial decision to charge her with possession of actual methamphetamine, as opposed to a mixture or substance containing methamphetamine, results in an unusually harsh sentence.

---

[3]Defendant stated that a motion for downward departure was precluded by the plea agreement. That is not the case.

In response to an inquiry concerning the reason for the federal prosecution, the government stated that the action was referred to federal court because Almaguer and Clark could have "worked with police," but refused to do so.  The government stated that Almaguer had not done all she could do to help the government.  There was no showing that Almaguer had any information to provide to law enforcement.

II.  DISCUSSION

Under *United States v. Booker*, 543 U.S. 220 (2005), the Guidelines are no longer mandatory.  *United States v. Gall,* 446 F.3d 884, 888 (8th Cir. 2006) (noting that "[i]Instead, the district court must take the advisory guidelines into account together with other sentencing factors enumerated in 18 U.S.C. § 3553(a)").  *Id.*  After *Booker,* there are essentially three steps to determine an appropriate sentence: first, the sentencing court should determine the applicable Guidelines range without consideration of any Guidelines departure factors; second, the court, where appropriate, should consider the departure provisions in the Guidelines to determine the resulting Guidelines range; and  third, the court should consider the other statutory sentencing factors set forth in 18 U.S.C. § 3553 to determine whether to impose the Guidelines sentence, as ascertained in the prior steps, or a nonguidelines sentence driven by the other statutory considerations.  *United States v. Sitting Bear,* 436 F.3d 929, 934-35 (8th Cir. 2006).  The appropriate sentencing range under the Guidelines remains an important sentencing factor.  *United States v. Haack,* 403 F.3d 997, 1002–03 (8th Cir.), *cert. denied*, 126 S. Ct. 276 (2005); *United States v. Mashek*, 406 F.3d 1012, 1016 (8th Cir. 2005)(stating that the Guidelines range is the critical starting point in imposing a sentence).

Under the Guidelines, base offense levels for drug-trafficking crimes are determined by quantity. U.S.S.G. § 2D1.1(c), Drug Quantity Table. Methamphetamine exists in both powder and crystalline forms. *See* United States Sentencing Commission, *Methamphetamine - Final Report of the Methamphetamine Policy Team* at 14 n.40 (November 1999), *available at* http://www.ussc.gov/research.htm (hereinafter, "1999 Methamphetamine Report"). The crystalline form, known as "ice" is a variant of the substance that can be smoked. *Id.* Methamphetamine powder is soluble in water or alcohol and can be injected, swallowed or snorted. *Id.* For sentencing purposes, the Guidelines distinguish between two forms of methamphetamine powder—the pure drug (meth-actual) and a mixture of the drug with adulterants (meth-mixture)—and provide two methods for determining a defendant's base offense level in methamphetamine powder cases: (1) the weight of the actual methamphetamine contained within a mixture; or (2) the weight of the entire mixture containing a detectable amount of methamphetamine. U.S.S.G. § 2D1.1(c), Notes to Drug Quantity Table at ¶ (B). The ratio between the penalties for distribution of a mixture or "cut" form of the drug and for distribution of the "pure" form is ten to one. *See* U.S.S.G. § 2D1.1(c)(i.e., it will take a quantity of a mixture that is ten times the quantity of either actual methamphetamine or "ice" to result in the same base offense level). These alternative quantities of meth-actual and meth-mixture required for each base offense level in the Drug Quantity Table roughly correspond to the 10:1 ratio codified by Congress in the mandatory minimum penalty provisions applicable to methamphetamine offenses. *Compare* 21 U.S.C. § 841(b) (1)(A)(viii) *&* § 841(b) (1)(B)(viii) *with* U.S.S.G. § 2D1.1(c) (4) & (7) (Level 32 corresponds to the quantity that triggers a ten-year mandatory

minimum and level 26 corresponds to a five-year mandatory minimum sentence); *see also* U.S.S.G. § 2D1.1, comment., n. 10 ("The Commission has used the sentences provided in, and equivalences derived from, the statute (21 U.S.C. § 841(b)(1)), as the primary basis for the guideline sentences"); *Neal v. United States,* 516 U.S. 284, 292 (1996) (noting "the Commission has sought to make the Guidelines parallel to the scheme of § 841(b)(1) in most instances").

Determination of the quantity of the "pure" methamphetamine in a mixture requires laboratory analysis to determine the purity of the drug. 1999 Methamphetamine Report at 15; *United States v. Houston,* 338 F.3d 876, 878-79 (8th Cir. 2003). The Guidelines require that the offense level be determined by either the entire weight of the mixture or the weight of the actual methamphetamine, "whichever is greater." U.S.S.G. § 2D1.1(c), Notes to Drug Quantity Table at ¶ (B); *United States v. Nevarez-Espino*, No. 06-1623, slip op. at 2 (8th Cir. Dec 27, 2006).

At the second step of a post-*Booker* sentencing determination, the district court proceeds in the same fashion as it did before *Booker*. *See Haack,* 403 F.3d at 1003. In considering departure, a district court must decide whether the Sentencing Commission has forbidden, encouraged, or discouraged a departure based on a certain feature. *Koon v. United States,* 518 U.S. 81, 95-96 (1996); U.S.S.G. §§ 5H1.10 (prohibiting consideration of race, sex, national origin, or creed); 5K2.1-23 (enumerating encouraged factors); 5H1.6 (discouraging consideration of family ties and responsibilities). Under the Guidelines, the court is authorized to depart if the factor is an encouraged factor and the Guidelines do not already take it into account. *United States v. Lightall*, 389 F.3d 791, 796 (8th Cir. 2004).

Discouraged factors can be the basis for a departure "if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Lightall,* 389 F.3d at 796; *United States v. Hadash,* 408 F.3d 1080, 1083 (8th Cir. 2005) (holding, post-*Booker*, that a district court can depart without abusing its discretion if the case falls outside the heartland of cases in the Guidelines at issue). Departures are also appropriate "if the sentencing court finds that there exists an aggravating or mitigating circumstance 'of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.'" *United States v. Chase,* 451 F.3d 474, 482 (8th Cir. 2006) (*quoting* U.S.S.G. § 5K2.0).

Ordinary post offense rehabilitation is already accounted for in the guideline that provides for a decrease in offense level for acceptance of responsibility in U.S.S.G. § 3E1.1. *United States v. Grinbergs,* — F.3d —, —, 2006 WL 3590667 at *3 (8th Cir. Dec. 12, 2006); U.S.S.G § 3E1.1, comment. (n. 1 (g)) (noting that a defendant's efforts at counseling or drug treatment can demonstrate acceptance of responsibility). An additional reduction is warranted only if a defendant's rehabilitation "went above and beyond the degree of rehabilitation contemplated by § 3E1.1." *Grinbergs,* 2006 WL 3590667 at *3; *United States v. DeShon,* 183 F.3d 888, 889 (8th Cir. 1999) (noting that a departure for post-offense rehabilitation is warranted only if the defendant's efforts are exceptional enough to be atypical of the cases in which the acceptance-of-responsibility reduction is usually granted).

Once the district court calculates the advisory Guidelines range, including departures, it "may then impose a sentence outside the range in order to 'tailor the sentence in light of the other statutory concerns' in § 3553(a)." *United States v. Gall,* 446 F.3d at 889 (8th Cir. 2006) (*quoting Booker*, 543 U.S. at 245-46 (2005)). The statutory concerns expressed in Section 3553(a) require the sentencing court to "'impose a sentence sufficient, but not greater than necessary,' to comply with sentencing goals considering the nature and seriousness of the offense, the history and characteristics of the defendant, and the need for the sentence to provide justice, deterrence, and other goals of punishment." *United States v. Pappas,* 452 F.3d 767, 773 (8th Cir. 2006); *see* 18 U.S.C. § 3553 (a)(2)(A)-(C). The court must also consider the need to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2)(C)-(D).

A sentence within the Guidelines range is presumptively reasonable, but "it does not follow that a sentence outside the guidelines range is unreasonable." *United States v. Myers,* 439 F.3d 415, 417 (8th Cir. 2006). A defendant may rebut the presumption of reasonableness in certain "highly unusual circumstances." *United States v. Medearis*, 451 F.3d 918, 920 (8th Cir. 2006) (stating that "to consider the guidelines is not to be ruled by them"). One of the highly unusual circumstances that will support a nonguidelines sentence is the existence of unwarranted sentence disparities between defendants who have been found guilty of similar conduct. *See United States v. Krutsinger,* 449 F.3d 827, 830 (8th Cir. 2006); *United States v. Lazenby,* 439 F.3d 928, 933 (8th Cir. 2006). District courts must

vary from the Guidelines range where other Section 3553(a) factors would render a sentence within the Guidelines range unreasonable. *Medearis,* 451 F.3d at 920.

Sentences varying from the Guidelines range are reasonable if the district court offers justification based on the factors in 18 U.S.C. § 3553(a). *United States v. Rogers,* 448 F.3d 1033, 1035 (8th Cir. 2006). Although the court "need not categorically rehearse each factor, 'the further the judge's sentence departs from the guidelines sentence, the more compelling the section 3553(a) justification must be.'" *Id.* (*quoting United States v. Givens,* 443 F.3d 642, 646 (8th Cir. 2006)); *United States v. Lazenby,* 439 F.3d at 932 (stating "[h]ow compelling that justification must be is proportional to the extent of the difference between the advisory range and the sentence imposed"); *United States v. Larrabee*, 436 F.3d 890, 892 (8th Cir. 2006) (noting that as the size of a variance from the advisory Guidelines sentence grows, so too must the reasons that warrant it).[4] However, facts already taken into account in applying the safety-valve cannot serve as compelling justification for a substantial variance. *United States v. Morales-Uribe,* — F.3d —, —, 2006 WL 3716590, *2-3 (8th Cir. Dec. 18, 2006).

---

[4]The Eighth Circuit's position that extraordinary variances from a Guidelines sentence must be supported by extraordinary circumstances, *see e.g, Rogers,* 448 F.3d at 1035, has been called into doubt by the United States Supreme Court's recent grant of certiorari to address the question of whether it is "consistent with *United States v. Booker,* 543 U.S. 220 (2005), to require that a sentence which constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances?" *Claiborne v. United States,* No. 06-5618, — S. Ct. —, 2006 WL 2187967 (Nov. 3, 2006). Sentences that vary from the Guidelines sentencing range by over 50 percent have generally been characterized as extraordinary. *See, e.g., Rogers,* 448 F.3d at 1035; *United States v. Meyer,* 452 F.3d 998, 1001 (8th Cir. 2006) (affirming a 50 percent upward variance and holding a variance of 50 percent is extraordinary). In more recent cases, the Eighth Circuit has recharacterized the standard as requiring substantial variances to be supported by compelling circumstances. *See Morales-Uribe,* — F.3d —, —, 2006 WL 3716590, *2-3 (8th Cir. Dec. 18, 2006).

Factors that were discouraged or prohibited departure factors under the mandatory Guidelines may be considered in applying the § 3553(a) factors. *United States v. Lazenby*, 439 F.3d at 933. "[P]re-*Booker* departures and post-*Booker* variances are not the same" and there may be "cases that would not justify a departure under the Guidelines but which are appropriate for a variance" as well as "cases in which a combination of a Guidelines departure and other § 3553(a) factors may produce a lower reasonable sentence than a departure alone." *United States v. Robinson,* 454 F.3d 839, 842 (8th Cir. 2006).

### III. ANALYSIS

#### A. Guidelines Sentence

With respect to the calculation of Almaguer's Guidelines sentencing range, the court first determines that her base offense level is 26. The court also finds, without objection from the government, that she is eligible for application of the Guidelines corollary to the statutory "safety-valve," and thus eligible for a two-level reduction under U.S.S.G. § 2D1.1(b)(9). She is also entitled to a three level reduction for acceptance of responsibility. Accordingly, under the Guidelines, her offense level before departures is 21. At criminal offense category I and offense level 21, Almaguer's Guidelines sentencing range is 37 to 46 months.

At the sentencing hearing, defense counsel did not move for a Guidelines departure, believing such a motion was precluded by the plea agreement. The plea agreement, however, did not contain any waiver with respect to departure motions. Accordingly, the court will consider defendant's motion for a sentence outside the Guidelines as a motion for a departure as well as a variance.

For the reasons set forth below in the court's discussion of a variance, the court finds that a downward departure as "outside the heartland" or for extraordinary post-offense rehabilitation under U.S.S.G. § 5K2.0 is warranted in this case. The court finds Almaguer's rehabilitation is exceptional enough to be atypical of the cases in which the acceptance-of-responsibility reduction is usually granted and warrants a departure.

In the court's experience, Almaguer's rehabilitation is far outside the norm. First, it is unusual that a defendant with a substantial addiction who is charged with a drug crime will show complete compliance with a drug-testing regimen while under supervision. Almaguer has reported for and tested clean on all drug tests. Also, even in a formal treatment program, it is unusual that a methamphetamine offender will successfully abstain from drugs. Almaguer's ability to stay free of drugs through her own efforts and without the aid of formal treatment is exceptional. Her achievement is even more extraordinary in view of her long-standing and severe addiction. The court is sadly familiar with the addictive power of methamphetamine and the difficulty of overcoming that addiction. The court finds that Almaguer's commitment to her rehabilitation is sincere and genuine. In this court's experience, Almaguer's efforts go far beyond those exerted by a typical offender who is credited with two-or-three-level reductions for acceptance of responsibility.[5] The court finds that Almaguer's rehabilitation and recovery is exceptional and the court will accordingly depart from the Guidelines range on that ground. The court finds a departure from the low end of the Guidelines range (37 months) to a sentence of 24 months is appropriate in this case.

---

[5]In the court's experience, almost all defendants who enter a plea of guilty are afforded the reduction.

The departure is further justified by the combination of factors that take this case "outside the heartland" of cases contemplated by the sentencing commission in formulating the methamphetamine trafficking guideline. The court is troubled by the government's intimation at sentencing that this prosecution was motivated in part by Almaguer's failure to fully cooperate with authorities. That rationale is at odds with its position on the safety-valve issue. The government's acquiescence to application of the safety-valve is an affirmation that the defendant has truthfully and completely provided all relevant information concerning the offense to the government. There is nothing in the record to support the government's reversal of position; nothing suggests that Almaguer has been any more forthcoming with information than she was at the time of her arrest. Moreover, the government does not refute Almaguer's statement in the PSR that she had no useful information to provide. The circumstances of Almaguer's prosecution in federal court instead of state court could be interpreted as exhibiting some elements of a vindictive prosecution.

The court further notes that the quantity of actual methamphetamine that Almaguer possessed barely exceeded the threshold for her offense level and correspondingly, for the mandatory minimum sentence. Together with evidence that the amount was essentially a user quantity at Almaguer's consumption rate and the dearth of evidence of Almaguer's actual trafficking in drugs, the relatively low quantity of actual methamphetamine demonstrates that this case is outside the heartland of methamphetamine-trafficking convictions contemplated in formulating the Guidelines.

Moreover, the government's disparate treatment of the two defendants with respect to charging and plea negotiation supports a departure. Although Clark was arguably the

14

more culpable of the two defendants, the government's charging practices and its negotiation of the plea agreements allowed Clark to plead to distribution of less than 5 grams of actual methamphetamine while Almaguer was charged with distribution of more than five grams of actual methamphetamine. Almaguer was exposed to a mandatory minimum sentence but Clark was not. The interplay between the Guidelines, the statutory mandatory minimum sentences, and the alternative methods of determining methamphetamine quantities results in an anomalous situation that also takes this case "outside the heartland" of drug-trafficking offenses.

Almaguer's argument that the government unfairly manipulated her sentence by indicting her for actual methamphetamine as opposed to a mixture is without merit. The Guidelines provide that the method of determining quantity that results in the highest sentence should be used. Thus, even if the indictment had charged possession of a mixture or substance containing methamphetamine, the Guidelines' commentary directs the court to apply the offense level determined by the weight of the pure methamphetamine in the mixture or substance if doing so would result in a higher offense level. Accordingly, the actual/mixture distinction would not affect the defendant's Guidelines sentencing calculation. Also, because the total quantity of methamphetamine attributed to each defendant would be the same by virtue of the relevant conduct guideline, the actual/mix distinction makes no difference with respect to one defendant's sentence vis-a-vis the other defendant's sentence.

The differences in charging and the different negotiated plea agreements, however, will affect the sentencing of the two defendants, in that Almaguer's exposure to a mandatory minimum sentence can be avoided only through application of the statutory safety valve

and, under Eighth Circuit precedent, the court cannot consider conduct that establishes a defendant's entitlement to the statutory safety-valve as grounds for a variance under 3553(a) once the defendant has received safety-valve relief. *See Morales -Uribe,* — F.3d at —, 2006 WL 3716590 at *2-3. Because he has more than one criminal history point, Clark would not have been eligible for safety-valve relief, but could benefit from the safety-valve factors in connection with a variance. Any benefit that could inure to Almaguer, on the other hand, is limited by the benefit conferred under the safety-valve. In light of these unusual circumstances, the court finds that either a departure, or, as discussed below, a variance, from the Guidelines sentencing range is appropriate in this case.

    B.  Section 3553(a) Factors

 For the reasons discussed above in connection with a departure, the court finds a sentence of twenty-four months is reasonable under 18 U.S.C. § 3553(a). In consideration of the nature and circumstances of this crime, the court notes that the government has an exceedingly thin case against this defendant. The quantity of methamphetamine that Almaguer possessed amounted to little more than a one week supply of methamphetamine for her personal use. There is virtually no evidence that this defendant trafficked in methamphetamine. Only Clark has a real connection, through the transaction with the confidential informant, to actual selling. Almaguer admitted only that she would have used and "shared" the methamphetamine that the authorities seized. "Sharing," of course, amounts to distribution, but the fact that she was so loosely connected to typical "trafficking" serves to lessen her culpability to some degree. Almaguer is only vicariously involved in the trafficking by virtue of her entanglement with Clark. Also, the troubling anomalies in the

16

government's prosecutions of Clark's and Almaguer's cases merit consideration in connection with the nature and circumstances of the offense.

Further, in considering the history and characteristics of the defendant, the court notes the relevance of her extraordinary rehabilitative efforts. Her history demonstrates that she has overcome significant obstacles, including long-standing abuse and addiction. She is now married and employed. She has shown considerable determination in her commitment to recovery from her addiction, including daily attendance at Narcotics Anonymous meetings. She has demonstrated her truthfulness and cooperation to the government to the extent of her ability to do so.

The court has also considered the need for the sentence to promote justice, deterrence, and other goals of punishment. A reduction of Almaguer's term of imprisonment from the low end of the recommended Guidelines range of 37 months to a sentence of 24 months will promote justice and provide deterrence to other offenders. Twenty-four months is a significant amount of incarceration, especially since Almaguer would most likely have been a candidate for diversion or drug court if prosecuted in state court.

Also, this sentence will protect the public from further crimes of the defendant and will provide the defendant with needed addiction treatment in the most effective manner. There does not appear to be any great need to protect the public from future crimes of the defendant as long as she remains drug-free. A sentence that recommends participation in the Bureau of Prison's intensive drug rehabilitation treatment program, and is of sufficient length to enable Almaguer to avail herself of the program, will further ensure protection of

the public.[6]  Accordingly, the court finds a sentence of twenty-four months' imprisonment is appropriate in consideration of the factors set forth in 18 U.S.C. § 3553(a).  A Judgment and Commitment and statement of reasons in conformity with this sentencing memorandum will issue this date.

DATED this 5th day of January, 2007.

BY THE COURT:

s/Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge

---

[6]In the court's experience, because there are waiting lists, participation in the program is available only to inmates incarcerated for at least twenty-four months.